May it please the Court, I'm Tanya Morrow, representing Mr. Johnson today. As you know, this case has to do with the Fourth Amendment inventory search. And we've argued that the purported search of the vehicle and Mr. Johnson's person were not conducted according to the standard criteria of the Portland inventory policies. By their terms, and as those terms had been interpreted by both the state and the federal court, the property located in the vehicle which was seized was to be listed by their outward appearances. And a comprehensive list was supposed to be made. This directive in the inventory policies has been characterized by the district court as a simple directive to conduct and prepare a list of the schedule of property containing a designated or description of each specific item. Officer Corona did not do that. In his search warrant affidavit, he purported, in our view, falsely testified in that affidavit that the two receipts that he listed of the property in that search warrant affidavit were all the property that was in the vehicle. And then Mr. Johnson found out later after trial that that was not the case. In addition, Officer Corona actually testified that all of the two bags that he found in the trunk were the whole sum of all the property that he found in the trunk. Does the police department have a form that the officers are supposed to use when they do an inventory search or something? The policy appears to just state that they're supposed to do a property receipt  And in this case, there was a tow receipt that listed a property that was not listed in any report receipt that the Officer Corona prepared. And there was a receipt for those. What was it, $7,000 that they took off his person? There was actually, I don't believe that Mr. Johnson received a receipt for the $7,000. It was listed in the property reports only, and it was actually tendered to Multnomah County for purposes of forfeiture. It was not even put on his books. It was not kept with the arresting agency or lodged with him. But it is in the record at ER 53, is it not? What's that, Your Honor? The receipt is in the record, is it not? Well, there is a report of the receipt of the $7,000, $7,100, yes. Right, right. Okay. So the policy itself indicates that it's supposed to be given to Mr. Johnson, and that's, I believe, that the record supports the fact that it was not given to him. It was part of the police record. That's it. So that's one of the aspects. Do you draw anything else from the fact that they didn't prepare this inventory cheat? Yes. I mean, what do you take from that? Just that they didn't comply with the police department policy? They didn't, and this was not. Do you draw anything else from that? Well, this is, yes. Of course, we purported that this was not a negligent act, and this is exactly the kind of conduct that needs to be deterred by way of a suppression motion. But not keeping, not preparing this inventory cheat? That's the conduct that has to be deterred? Exactly. If the inventory requires that all items in the vehicle be listed, then that's what it requires, and it requires such for a caretaking purpose and not for purposes of searching. It's really clear from the record, as we've indicated, that if you don't believe that the failure of Officer Corona to actually do that comprehensive list, which is the strict limits of that policy, as both the courts, both State and Federal courts have stated, if you don't believe that's enough to require suppression to deter that conduct, then, of course, we've indicated that there's lots of evidence in this case, in this record, to indicate that there was an intent to search, and that's really what was going on. That's what your point is? That's what the point of all this is? That's our second point. Our first point is that, you know, in order for there not to be an inference First point seems a little bit too simple. Well, in order for there not to be an inference if there's a search. What you're suggesting is that the whole purpose here to suppress is to force the PD to prepare some form listing these items. It's a caretaking function. In order to prepare, you know, to protect the police officers with regard to avoiding risk of claims of theft, you need a comprehensive list of the property. That's what the policy is about and that's what it's for. And it was not conducted here. What instead happened was the officer took and seized property for which he did not have probable cause to seize and held it for 10 days while he went and obtained a search warrant. In doing so, purported to the magistrate that all of the evidence that he seized was actually in the search warrant affidavit and it didn't include everything that was in the car, which also included a bag of clothes that might have belonged to somebody else. Counsel, I'm interested in where this property was stored. Well, according to the officer's testimony, I believe, and as mentioned in the State's affidavit, it was stored in an evidence property room. Now, whether or not there's, you know, there is an evidence room versus just a general property room, I'm not sure. What will the record tell us as to the distinction between the property room, which would not be a problem, and the storage in the evidence room, which could very well be a problem? Well, Your Honor, I believe that storing the backpacks and the duffel bag, the two bags that were found in the trunk, storing them in the property room is a problem. They were seized and taken out of the vehicle. They should have been left in the vehicle, and the officer should have sought his search warrant before taking them out of the vehicle. So you're telling us it was stored in the property room, not the evidence room? Is that what you're telling us? No, Your Honor. I'm saying that the bags should not have been taken out of the vehicle. They weren't on the vehicle. They were taken out of the vehicle at the scene. At the scene, right. But my question is long after that. Where were they stored? They were taken to some facility, and it makes – it could make a difference that if it were put in the evidence room, that would be one issue. If it were put in the property room, that might not be such an issue. I believe the State's answer indicates that it was stored in the evidence property room. They used those two terms together. I thought in the police officer's report after the incident, he notes at the bottom that it was booked into evidence. I believe that's the case, Your Honor. It appears that they seized it for evidence, and as evidence, the $7,100 was transferred to Multnomah County for forfeiture proceedings. The bags were seized as evidence, and 10 days later, they attempted to get a search warrant affidavit, and only then were they able to demonstrate probable cause. And there's been no dispute that they had no probable cause beforehand. So our position is, number one, they didn't comply with the inventory policy. In and of itself, that raises the inference of lack of good faith, a lack of an inference of an intent to search, and that we've demonstrated at least eight or nine different cases in this record, both objective facts and facts of subjective intent that demonstrate that this was an intent to search the vehicle. Okay. You want to save the rest of your time? I do. Thank you, Your Honor. Good morning. May it please the Court. I'm Hannah Horsley. I'm an assistant United States attorney, and I'm representing the United States. The officers here did exactly what the Court wants them to do. They were executing an arrest warrant, a lawfully issued arrest warrant. They had authority to impound the vehicle. They conducted an inventory pursuant to the policy of the Portland Police Bureau, and they seized the policy. One of the defendant's main concerns is that they didn't account for items that weren't seized, items that were left in the car as somehow evidence of a ruse to actually conduct an investigation of criminal activity. The policy under the Portland Police Bureau does not require the listing or accounting of any items that are not seized. So all of those items that were left in the vehicle, the shoes, the Garmin GPS, all of those other items, would not have properly been. What was the basis for seizing those three items? Which three items? The backpack. I think at that point in the stop, they had at that point inventoried the defendant, found a restricted weapon on him. At the time they stopped him, they knew he was a convicted felon for being a felon in possession of a firearm. They knew he had an outstanding warrant for probation violations. He had on him a restricted weapon, which was effectively a switchblade in his front pocket. He had $71,000 in cash in small increments, which the district court found was consistent with drug trafficking. Then they get in to do the inventory of the car. What was the basis for that finding? The evidence that people who deal in drugs carry around $7,100? Well, there was evidence on the record that people who deal in drugs, drug dealing is a cash business. They tend to have large volumes of cash. The increments of the cash, there were multiple bills in $100 increments and $20 increments only. That money was all folded in his back pocket separate from the $100 or more in his wallet. And the district court did find, and the evidence supports the finding that that was evidence of drug trafficking. So they had probable cause to search the vehicle to get those items? No. They still at that point are looking at the vehicle just pursuant to the inventory policy now that it's been impounded as a traffic hazard. Well, the problem with the impounding argument is that Officer Corona specifically said he was taking it as evidence. And as I understand it from the prior colloquy, the items were stored in the evidence room. Are you talking about the duffel bag in the backpack? Yes. So I think if I can just answer that in conjunction with Judge Piazza's question, I think by the time he got to the bags that were in the trunk of the person, but in the other open compartments of the car, they found a stun gun, which would have been right at the feet of the defendant, which is another restrictive weapon, evidence of a meth pipe used for smoking meth that had drug residue, as well as other items in the car. Then they get to those bags. It is indicated in the excerpts of record at 56 in Officer Corona's report after the arrest that the two restrictive weapons, both the Kershaw knife on his person and the stun gun, were seized as evidence. And those are, of course, evidence of criminal activity. The glass pipe is contraband. But that's the problem. Shouldn't that have been suppressed because of lack of a warrant at that time? No, because they were in plain view when they were inventorying the car. They were? And on his person. The stun gun was at his feet. Well, what is the evidence that the officer lifted the top of the storage well for the spare tire? There really is very little evidence. There was no evidence of the suppression hearing about that wheel well. What the officer, anything found in the wheel well, what the officer did, was pursuant to the policy, and under Portland Police policy, the trunk must be inventory. In the course of inventorying the trunk, he testified that he took out the bags so he could inventory the rest of the trunk. In doing so and in placing the two bags on the ground, they did clink. He noticed they were heavy, and he did hear a clink when he placed them onto the concrete ground. He then inventories the rest of the car. Based on all the other evidence seen in plain view pursuant to the inventory, he then backs out, takes those closed containers, consistent with the inventory policy. He can't open or search a closed container. So he takes those and gets a search warrant, and the search warrant establishes probable cause in the district court. Well, he takes those, but isn't it significant that they were put in the evidence locker and not the general property locker? Legally, I don't know that it matters. He, at that point, obtained a search warrant. He didn't search them. He had, at that point, reasonable suspicion that they may contain evidence of drug trafficking and the restricted weapons that they used. Because of the noise that was made by the duffel bag? As well as all of the other surrounding factors of what was found during the There was evidence on the record to indicate that Mr. Johnson was known to keep drugs and other contraband in personal safes. So at that point, he makes the connection between the clink on the ground and the possibility that this contains. So let me ask you this, Jess. The policy provide that they're to do an inventory search, inventory the items in the car at the scene before they call the tow truck? Yes. That's what it says? Yes. And as this court found in Penn, that is mandated by the policy. The inventory needs to be done before the car is towed and goes into the custody. And when they do an inventory, the policy doesn't require them to list every item that's in the car that's been taken? That's correct. It only requires listing items that are seized. So those items that were left in the car or that were taken. So if there were valuables in the car, those needed to be accounted for under the policy. There seems to be a suggestion here that the Garmin GPS and the DVD player that got left in the car should have been accounted for. But those aren't valuables under the policy. Under the definition, and this is at Excerpts of Records 391 and 392, the policy, which is 14C.10.030C5, says the valuables constitute either cash over $50 or personal property valued at $500 or more. And there's absolutely no evidence that either the GPS or the DVD player or anything else left behind in the car that was reflected on that tow receipt would have been something that needed to be removed from the car pursuant to the inventory policy. The text of Officer Corona's testimony suggests that he thought that he was seizing the items in the trunk because they were evidence of a crime. Now, is his subjective motivation relevant? No, Your Honor. The reasonable desk is an objective standard. And this Court's ultimate determination is whether the conduct here was reasonable under the Fourth Amendment. I thought when you were doing an inventory search, you could look at their subjective intent. Well, no. No? I mean, the purpose, or at least I should say the purpose. What was the purpose of what he was doing? To inventory pursuant to the policy. This is a regulatory kind of search. Correct. Not a... That's a community caretaking function. The only thing that you offer here is this was a regulatory search. This was an inventory. All they did was seize. He couldn't leave. They couldn't. His vehicle was parked in such a way that it was blocking traffic. They had to get rid of it. Right. Remove it. And they called the tow truck. And they just were doing an inventory search. That's all they were doing. That's correct. And when you're doing an inventory search, you can't look at what the real purpose of what they were doing was. No, because under the case law... And it looks, you know, as Judge O'Scallen has pointed out, and just as the report, the custody report in the case that you just referred to, I mean, they put those items into evidence. They were looking for something else. This just wasn't a little, this just wasn't a slight little inventory search. They were looking for evidence. But as the case evolved, so, and it is true. I mean, they knew he had an outstanding warrant. They knew he was a dangerous individual. They went to great lengths to arrest him in a safe setting. But the evidence doesn't, the subjective intent is really not legally relevant. Oh, it is. Under both the Brigham State case and... What do we do with the Orozco case saying it is clear from the testimony of the searching officers that the inventory of the defendant's vehicle was for an investigatory police motive. That alone is sufficient to conclude that the warrantless search of the car was unreasonable. Well, under the Supreme Court jurisprudence and the Bertine case, the Brigham City case that have come out since, it's clear that the subjective intent of the officers is not legally relevant, that this Court looks at the reasonableness. If the policy itself, if the inventory policy itself is designed to satisfy the caretaking functions and the officer is operating consistent with the caretaking policy and the inventory policies of the department, then any subjective intent they may have had is legally irrelevant. Any ruse by the police is irrelevant in inventory searches? If it were a true ruse and therefore unreasonable under Wren and all of that progeny, that would be a problem, I agree. But the evidence here is really, there really wasn't a ruse. It's clear that what they did was consistent with the policy. The items they left in the car, they left in the car consistent with the policy. I don't think, with respect, that you really answered Judge Bea's original question with respect to Orozco. Are you suggesting that Brigham City has overruled Orozco and therefore we can ignore him? No. No, Your Honor, but I do think that Orozco is still the law of the circuit. That's correct. And how can you But I think the factual specifics of this inventory policy, these officers' actions, show that ultimately the conduct here was reasonable under the Fourth Amendment, and that's the question before the Court. Your time is up. Thank you, Your Honor. Thank you very much. I otherwise submit on the briefing. Okay. As we pointed out in the briefing, you know, you can look at the subjective intent in these cases. There's still two exceptions for that rule, and that is for inventory searches and blockades. So we've cited the Brigham City case with regard to that. So that's clear. What else do we have? We need to be careful. The government interprets the policy different than at least the Federal court in the Penn case, suggesting that only the property that has any value can be – I mean, the property of value can be taken from the vehicle, and that's the only thing that needs to be set forth in a receipt. And that's not the case. If you look at the specific language of that provision where they're suggesting that the receipt must complete an accounting for all items seized, the last sentence there says, when a vehicle is part of a felony crime scene or known or suspected to contain evidence of a felony, members should consult with an investigating sergeant prior to towing the vehicle. So there's clearly in the policy itself an exception for, you know, taking anything and recording anything that's intended to be seized as evidence. And that's what we have here. Your Honors are aware of it. The bags, how do we know what the values of those are compared to the DVD player and the garment? Those things were listed on the property receipt left in the vehicle, as the policy suggests. So I don't know how many receipts we're going to have in an inventory case. We're supposed to have one that lists all the – comprehensively all the property that was in the vehicle for the caretaking function, and that's not what happened here. Again, Your Honors have noted also there was a couple other issues with regard to the policy, and that is, is that the property is not supposed to be manipulated. It's supposed to be identified in the receipts by its outward appearance. In this case, we picked up the bags and we put them outside, and we're also – the policy does not specifically state that the wheel well can be searched. So we pointed that out as well. And, yes, Officer Corona indicated in a second interview or a second testimony that that's what he was intending to do there. You're down to 27 minutes. I think that's all I have. Perfect. Thank you. Perfect, counsel. Thank you. Thank you, counsel.
judges: O'scannlain, Paez, Bea